# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**NAOMI SILVERIA,**

    **Plaintiff,**

                         **Case Number** 8:20-cv-442 _____

**v.**

**ROTECH HEALTHCARE, INC.**

    **Defendant.**

_____/

## Complaint & Jury Demand

1.     The Plaintiff, Naomi Silveria, sues Defendant, Rotech Healthcare, Inc., pursuant to 29 U.S.C. § 2617 for Family Medical Leave Act (FMLA) interference and retaliation.

2.     The Honorable Court has original jurisdiction pursuant to 29 U.S.C. § 2617(a)(2).

3.     Venue is appropriate in Tampa, because Plaintiff worked for Defendant in Polk County, Florida.

4.     Plaintiff worked for Defendant from January 2008 to September 2019.

5.     Defendant was Plaintiff's employer.

6.     Defendant employs over 50 employees within 75 miles of where Plaintiff worked.

7.      On or about March 2018, Plaintiff applied for intermittent FMLA leave and was approved for said leave through on or about March 2019.

8.      In March 2019, Plaintiff, once again, applied for intermittent FMLA leave.

9.      Defendant granted Plaintiff's FMLA leave in 2018.

10.     Defendant granted Plaintiff's FMLA leave in 2019.

11.     Defendant was approved for intermittent FMLA leave through March 2020.

12.     Plaintiff needed FMLA leave for her own serious health issue.

13.     Namely, Plaintiff had severe arthritis and pain flair ups that occasionally required her to take a day or part of a day off due to unbearable pain.

14.     Plaintiff was an employee in good standing each year from 2008 through 2018.

15.     Plaintiff remains eligible to work for Defendant.

16.     Plaintiff last worked in a unit called *Special Projects*.

17.     Plaintiff enjoyed working in *Special Projects* because she would, among other activities, help customers obtain refunds.

18.     It was a fulfilling job.

19.     Customers were usually happy with the work from employees in *Special Projects*.

20.     The *Special Projects* unit has a low employee attrition rate.

21.     The *Collection* unit has a high employee attrition rate.

22.     Generally, employees for Defendant prefer to work in *Special Projects* over *Collection*.

23.     Specifically, Plaintiff strongly preferred *Special Projects* to *Collection*.

24.     A request to move from *Special Projects* to *Collection* would be considered an adverse employment action.

25.     The year prior to taking FMLA leave in March 2018 Plaintiff had worked more than 1250 hours for Defendant.

26.     The year prior to taking FMLA leave in March 2019 Plaintiff had worked more than 1250 hours for Defendant.

27.     The leave taken in 2019 was for the same health condition that leave was taken in 2018.

28.     On or about September 20, 2019, Defendant terminated Plaintiff.

29.     Defendant is engaged in interstate commerce.

30.     Prior to needing FMLA leave in 2018 and 2019, Jamie Foster treated Plaintiff the same as she treated other employees.

31.     Defendant identified Foster as Plaintiff's supervisor in FMLA paperwork.

32.     Foster was the moving force behind Plaintiff's termination.

33.     Foster was present on the day Plaintiff was terminated by Defendant.

34.     Foster engaged in microaggressions towards Plaintiff once she started taking intermittent FMLA leave.

35.     Foster had the authority to discipline Plaintiff.

36.     Foster had the authority to evaluate Plaintiff.

37.     Foster was kind to employees she favored.

38.     Foster would socialize with employees she favored.

39.     Foster was polite with employees she favored.

40.     Prior to 2018 Foster was both polite and kind to Plaintiff.

41.     After 2018 Foster was impolite and unkind towards Plaintiff.

42.     Foster would act as though Plaintiff did not exist.

43.     Defendant, through the conduct of Foster, made Plaintiff feel as though she was a burden for taking intermittent FMLA leave.

44.     The slights of Foster impacted Plaintiff's confidence.

45.     The slights of Foster were both verbal and non-verbal.

46.     Foster made Plaintiff feel as though she was not welcome.

47. Foster made Plaintiff feel as though she was not an employee in good standing.

48. Foster made Plaintiff feel as though it was unnecessary for her to take FMLA leave.

49. Plaintiff dreaded seeing Foster due to her microaggressions.

**I.     Count I – FMLA Interference**

50. Plaintiff reincorporates paragraphs 1 through 49 as if fully stated herein.

51. Plaintiff was entitled to take intermittent FMLA leave as needed.

52. Defendant prevented Plaintiff from taking intermittent FMLA leave in 2018 and 2019 without feeling as though she was letting the company down, was underperforming and was not wanted.

53. Taking FMLA leave should not lead to insecurity about one's job.

54. Taking FMLA leave should not lead to receiving microaggressions from one's supervisor.

55. Defendant interfered with Plaintiff's right to take intermittent FMLA leave.

56. Due to Defendant's microaggressions Plaintiff did not take all the FMLA leave she was entitled to take.

57.     The cumulative impact of Defendant's microaggressions led to Plaintiff losing her position in *Special Projects*.

58.     But for Defendant's interference Plaintiff would still be employed by Defendant in *Special Projects*.

Wherefore, Plaintiff demands trial by jury, judgment, back pay, liquidated damages, front pay, attorneys' fees and costs.

## II.     Count II – FMLA Retaliation

59.     Plaintiff reincorporates paragraphs 1 through 49 as if fully stated herein.

60.     Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

61.     On or about September 20, 2019, Defendant terminated Plaintiff.

62.     Foster was a moving force in Plaintiff's termination.

63.     Foster wanted Plaintiff to be terminated due to her intermittent FMLA leave.

64.     Defendant fired Plaintiff in violation of the FMLA.

65.     Defendant refused to allow Plaintiff to return to work in *Special Projects* after her termination.

66.     Defendant was agreeable to allowing Plaintiff to return to work in *Collection* after her termination.

67.     Defendant intentionally terminated Plaintiff.

Wherefore, Plaintiff demands trial by jury, judgment, back pay, liquidated

damages, front pay, attorneys' fees and costs.

Respectfully submitted this 26th day of February 2020,

/s/ Bernard R. Mazaheri
Bernard R. Mazaheri
Florida Bar Number 643971
Mazaheri & Mazaheri
325 Shelby Street
Frankfort, Kentucky 40601
Tel – (863) 838-3838
Email – bernie@thelaborfirm.com

*Counsel for Plaintiff*